CHARLES LEHMANN *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 1—02—0472

Opinion filed September 9, 2003.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Diane M. Potts, Assistant Attorney General, of counsel), for appellants.

Robert E. Lehrer, of Lehrer & Redleaf, of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

The Illinois Department of Children and Family Services (DCFS) and its director, Jess McDonald, defendants, appeal an order of the circuit court reversing a refusal by DCFS to expunge a finding of child abuse by the plaintiffs, Charles and Vivian Lehmann. DCFS determined that child abuse allegations against plaintiffs should not be expunged after a hearing before an administrative law judge (ALJ). Plaintiffs sought judicial review. The circuit court reversed. Defendants appeal, seeking reinstatement of their denial of expungement of the child abuse findings against plaintiffs. We reverse the order of the circuit court and reinstate the order of DCFS.

■ On appeal from a circuit court's judgment, we review the administrative agency's decision and not that of the circuit court. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293 (1999). Our review extends to all questions of law and fact presented by the entire record. *Jackson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 293 Ill. App. 3d 694, 698, 688 N.E.2d 782 (1997). We regard an administrative agency's findings and conclusions on questions of fact as *prima facie* true and correct. 735 ILCS 5/3—110 (West 2000); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998). A reviewing court does not reweigh the evidence or substitute its judgment for that of the administrative agency, but only ascertains whether the findings of fact are against the manifest weight of the evidence and the opposite conclusion is clearly evident. *City of Belvidere*, 181 Ill. 2d at 204. An administrative agency's findings on questions of law are reviewed under the less deferential *de novo* standard. *City of Belvidere*, 181 Ill. 2d at 205.

■ DCFS reached its decision to deny plaintiffs' request for expungement after hearings before an ALJ which included the testimony of 15 witnesses. The testimony revealed plaintiffs' methods of disciplining their foster children, sisters Sandy C., Marcelia (also written as Marseala, Marycelia, Marttcelia) C. and Elizabeth C. The girls were sexually abused by their father before being placed in plaintiffs'

licensed foster care home in December 1995. Sandy was six years old, Marcelia was five and Elizabeth was four. DCFS removed Elizabeth from plaintiffs' home at plaintiffs' request in October 1997. DCFS removed Sandy and Marcelia against plaintiffs' wishes in June 1999 and notified plaintiffs in August 1999 that they had been "indicated" for child abuse. Under section 336.20 of the Illinois Administrative Code (the Code), an "indicated report" is a report of child abuse or neglect made to DCFS "for which it has been determined, after an investigation, that credible evidence of the alleged abuse or neglect exists." 89 Ill. Adm. Code § 336.20 (1996).

On November 6, 1999, plaintiffs requested an administrative hearing under section 336.110 of the Code (89 Ill. Adm. Code § 336.110 (1996)). Defendants notified plaintiffs that a hearing would be held on December 8, 1999. Testimony began before the ALJ on December 21, 1999. The parties agreed to future hearing dates of January 10 and 14, 2000.

Louisa (also written as Louis and Luisa) Salazar, a DCFS child abuse investigator, testified she investigated allegations by Elizabeth that plaintiffs hung the children from a pipe in the basement of plaintiffs' home and bound the children's mouths and hands with duct tape as punishment. Salazar testified that although Mrs. Lehmann said such incidents never happened, Mr. Lehmann showed Salazar a galvanized pipe on the basement ceiling and admitted hanging Elizabeth from the pipe for misbehavior for about 30 seconds on two or three occasions. Salazar said Mr. Lehmann said he hung Elizabeth for both discipline and exercise, but he denied hanging the other girls. Salazar said the policy of DCFS is that corporal punishment may not be used with foster children.

Salazar said Elizabeth reported that she once fell from the pipe and complained that plaintiffs forced her to run around in the basement with loud music playing. Salazar said Elizabeth claimed Marcelia also was hung from the pipe and forced to run around the basement with loud music playing and Marcelia's hands were duct taped to the floor. Salazar testified that Marcelia reported being hung from the pipe as punishment and Elizabeth was hung until she dropped. Salazar said DCFS ultimately removed Sandy and Marcelia from plaintiffs' home because of serious concerns about torture and the risk of physical harm.

On cross-examination, Salazar testified that Sandy and Marcelia said they wanted to be adopted by plaintiffs and Sandy denied being hung from a bar. The proceedings recessed abruptly when the ALJ told the parties that he had to leave.

The hearing resumed three weeks later on January 10, 2000, as

agreed. Salazar testified, "in general, [the children were subjected to] all sorts of irregular punishments that were not agreeable *** to any regular kind of punishment that we use ***. [T]hey were physically punished, corporal punishment that was not agreeable to the practice of DCFS ***." Salazar said the allegations of the girls being hung from a high bar, subjected to loud music, and forced to run laps and Elizabeth's allegations about duct tape were enough to show a substantial risk of harm.

Laura Michael was a caseworker for the Evangelical Child and Family Associates (ECFA), a private agency under contract with DCFS for casework with foster children. Michael testified that Marcelia and Sandy told her that Mr. Lehmann spanked them with a belt and Marcelia said Mrs. Lehmann locked her in the basement. Michael said on cross-examination that plaintiffs were rated "satisfactory" by ECFA, had been considered as adoptive parents for the girls and the girls had wanted to be adopted by plaintiffs but no longer did.

The hearing resumed on January 14, 2000, by agreement. Cindy Schultz, a licensed foster parent, testified that Sandy and Marcelia were placed with her after being removed from plaintiffs' home. Schultz testified to Marcelia's report that she was hung from a pole in plaintiffs' home many times and hurt herself when she fell. Schultz said Marcelia said she was forced to run around the backyard until she collapsed and around the basement with loud music playing to drown out her screams, was locked in the basement and was tied up and duct taped to her bedroom floor. Shultz said Sandy reported that Elizabeth was spanked by Mr. Lehmann, which left marks on Elizabeth's "behind." Sandy said she was forced to hang by the bar on one occasion. Schultz testified on cross-examination that the girls initially wanted to return to plaintiffs and Sandy said Mr. Lehmann characterized hanging from the bar as "fun."

Madeline McMahon, a licensed foster parent, testified that Elizabeth told her Mr. Lehmann placed duct tape over her mouth, hung her from a pipe, forced her to run outside until she was exhausted, forced her to run in the basement with loud music playing and spanked her with a belt. McMahon said Marcelia told her that plaintiffs forced her to run as punishment and Mr. Lehmann spanked her with a belt. McMahon testified that Marcelia and Sandy reported being hung from a bar as punishment and sent to their rooms, where they were given only bread and water. Defendants rested their case.

The proceedings resumed three weeks later on February 4, 2000. The record does not disclose the reason for or objections to the delay. Laurie Mudgett, a licensed foster parent who took the girls in on two occasions, said the girls did not complain about being hurt or receiving

inappropriate treatment in plaintiffs' home and wanted to be adopted by plaintiffs.

Mark Odell, an ECFA supervisor, testified on direct examination that Sandy and Marcelia never complained to their caseworker about corporal punishment, but Elizabeth reported that Mr. Lehmann had spanked her. Odell testified that Mrs. Lehmann called ECFA to "self-report" two incidents of corporal punishment—once when Mr. Lehmann spanked Elizabeth and once when Mrs. Lehmann slapped Elizabeth on the leg. Odell said ECFA regarded plaintiffs' self-reported instances of corporal punishment as license violations, not child abuse, and at first, the concerns were insufficient to remove Sandy and Marcelia. Odell testified that Mr. Lehmann acknowledged hanging Elizabeth from the pole but said he stood beside her while she was hanging. Odell said Mr. Lehmann admitted tearing off a piece of duct tape that Elizabeth put on her own mouth. Odell testified on cross-examination that he had concerns for the safety of Sandy and Marcelia after Elizabeth was removed, and in hindsight, he would have removed Sandy and Marcelia sooner.

Gary Beall, a friend of plaintiffs, testified that plaintiffs' home has no wood floors. He said he talked to Mr. Lehmann about the "exercise" bar in the basement and Mr. Lehmann made sure the girls would not fall. Teresa Pinder, the ECFA worker in charge of monitoring foster parents' licenses, testified that Mr. Lehmann told her that he always stayed right with Elizabeth while she was hanging from the bar. Christopher Barnes and Timothy Bryant, pastors of the Evangelical Free Church of Wauconda, each testified that plaintiffs' home has no wood floors and the basement door could not be locked. The proceedings then ended for the day, but the transcript does not contain a discussion of dates for resuming the hearing.

Before the next hearing, plaintiffs' counsel filed a motion to allow the testimony of a graphologist regarding notes allegedly written or signed by the children. The notes said the girls did not want to return to plaintiffs' home. The ALJ held a telephone conference with the parties on plaintiffs' motion on March 23, 2000, and denied the motion when the proceedings resumed on April 4, 2000.

Heather Gross testified that, as the girls' ECFA caseworker for $2^{1}/_{2}$ years, she saw them monthly. Gross said none of the girls reported corporal punishment in plaintiffs' home. Gross testified that Elizabeth was removed at Mrs. Lehmann's request and after the removal, Elizabeth reported that she was hanging from the pipe and her mouth was duct taped. Gross said she knew Elizabeth and Marcelia were forced to run laps as punishment, but when they stopped yelling, they could stop running. Gross testified that she thought the girls seemed

happy and plaintiffs were doing a good job of finding creative ways to administer punishment without using corporal punishment. Gross said she did not view disciplining a five-year-old child by having her run laps as corporal punishment.

Plaintiffs' biological children—Deb and Andrew, both adults—testified that they lived in plaintiffs' household when the girls were there and they did not see plaintiffs use corporal punishment. Deb and Andrew said plaintiffs' home has no wood floors and the bedroom and basement doors cannot be locked. Deb said she saw Elizabeth hanging from the bar in the basement on one occasion as Mr. Lehmann stood under Elizabeth with his hands under her arms.

Mrs. Lehmann testified that her home has no wood floors and only the master bedroom door has a lock. Mrs. Lehmann said her husband spanked Elizabeth but not the other girls. She admitted that she once slapped Elizabeth on the leg, but that and the other self-reported spanking by her husband were the only times plaintiffs used corporal punishment. Mrs. Lehmann said she never saw the girls hanging from a bar. She later testified that she knew her husband hung Elizabeth from a bar in the basement, but it was not for discipline, but to "burn up some energy" and "distract her mind" from screaming. Mrs. Lehmann estimated that Elizabeth was hung two or three times. She testified that when the girls ran laps in the basement, they were allowed to stop running when they stopped screaming. Mrs. Lehmann said she never investigated when Mr. Lehmann "exercised" the girls in the basement because she trusted him to take good care of them. Mrs. Lehmann denied ever punishing the girls by withholding meals. Mrs. Lehmann said none of the children was ever duct taped to the floor and she did not consider running laps or hanging from a bar to be corporal punishment.

Mr. Lehmann testified that ECFA's training for foster parents recommended exercising children for discipline. He testified that when Elizabeth threw temper tantrums, he would take her to the basement or outside to run so she could calm down enough to respond to other discipline such as "time outs" or loss of privileges. He said she hung from a bar while he stood beneath her with his hands ready to catch her. He said when Elizabeth was hanging, she would remain for "30 seconds or so." He testified, "she would run and I let her hang. And she would run and I let her hang." He estimated that this occurred four or five times, but Elizabeth never dropped or injured herself. He said Marcelia had to run but could not recall if Marcelia was hung from the bar. He said he spanked Elizabeth once but never spanked the others. As to the duct tape, Mr. Lehmann testified that Elizabeth was "having one of her temper tantrums and I tore off a piece of duct

tape and went upstairs and said that you be quiet, if you're not going to be quiet, put this on your mouth. And she probably looked at me funny and took it and put it on her mouth." He said the tape did not stick because Elizabeth's face and mouth were wet with saliva. He said none of the girls was taped to the floor and his home has no wood floors. Mr. Lehmann testified that he stopped using the bar as discipline after he discovered other ways of controlling Elizabeth's tantrums and none of the girls was ever locked in a room.

Defendants cross-examined Mr. Lehmann on April 7, 2000. He said the basement ceiling is about seven feet high and the bar—an electrical conduit—is flush to the ceiling at the seven-foot level. He said he believes corporal punishment is a good thing with one's own children, but he never spanked a child with a belt. He testified that he kept the piece of duct tape that Elizabeth had put on her own mouth on a shelf in Elizabeth's room and when she was about to launch into a "fit," he showed her the tape that had been on her mouth to help stop her tantrum. He said he threatened Elizabeth with the tape three or four times by showing it to her, but he would not put the tape over her mouth because he was "not allowed to." He said he never played loud music to drown out the children's cries and that they could stop running when they stopped "fussing." He admitted that when he told the girls to run or hang, it was not optional.

■ After the testimony, the parties negotiated dates in April and May to submit closing statements. On August 7, 2000, the ALJ issued a report recommending that McDonald grant plaintiffs' request to expunge the torture allegation but deny the request to expunge the finding of substantial risk of physical injury. The ALJ concluded that, as a matter of law, defendants had not established that the children had been tortured, although the plaintiffs' methods of discipline and care were "inappropriate." The ALJ determined that defendants established by a preponderance of the evidence that "the actions of the [Lehmanns] lead a reasonable person to believe that the[ ] children were in substantial risk of physical injury. When one considers the children's ages and their emotional problems resulting from their earlier sexual abuse in their birth home, one can only conclude that the children were at risk of not only physical injury but great mental distress." DCFS adopted the ALJ's findings as the agency's final administrative decision on August 31, 2000. Plaintiffs did not file a petition for reconsideration or rehearing, but the rules do not so require. The Code permits parties appealing child abuse investigation findings to seek judicial review of an administrative decision upon receipt of the notice of decision. 89 Ill. Adm. Code § 336.220(b) (1996).

Plaintiffs filed a complaint in the circuit court for administrative

review (325 ILCS 5/7.16 (West 2000)) on September 29, 2000, challenging defendants' decision as: (1) against the manifest weight of the evidence; (2) erroneous as a matter of law; and (3) a violation of plaintiffs' due process rights under the state and federal constitutions because the lengthy administrative process denied them a timely appeal. Their pleadings also included a motion for judgment reversing the final administrative decision which was filed under seal on February 28, 2001. Plaintiffs asserted that the DCFS report of child abuse against them was barred by the principles of collateral estoppel and *res judicata* and the ALJ's factual findings were inconsistent with the statutory definition of child abuse. In oral arguments, plaintiffs' counsel claimed that the ALJ's report was conclusory.

The circuit court, in its written order of January 11, 2002, reversed defendants' denial of plaintiffs' request to expunge because: (1) plaintiffs' due process rights were violated by delays in the administrative appeals process that were "seriously beyond reasonable"; and (2) the decision of the ALJ was conclusory.

Defendants appeal, asking us to reinstate their denial of plaintiffs' motion to expunge because: (1) plaintiffs' claims of delays in the administrative proceedings are either waived or, alternatively, insufficient to justify expunging a child abuse finding; and (2) the ALJ's written recommendation was sufficient to permit judicial review, and even if it was conclusory, that technicality does not justify expunging the record.

■ Plaintiffs have failed to file a brief as appellees, so we have elected to proceed on the record and defendants' brief only. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

■ At issue is the DCFS finding that plaintiffs placed the children at "substantial risk of physical injury," as defined in part 300, appendix B, of the Code (89 Ill. Adm. Code pt. 300, app. B (1996)):

> "Substantial risk of physical injury means that the *** caregiver *** has created a real and significant danger of physical injury *** to the child.
>
> This allegation of harm is to be used when the type or extent of harm is undefined but the total circumstances lead a reasonable person to believe that the child is in substantial risk of physical injury ***.
>
> This allegation *** includes incidents of violence or intimidation directed toward the child which have not yet resulted in injury or impairment but which clearly threaten such injury or impairment."

The Code describes incidents posing a substantial threat of physical injury as "violent or intimidating acts directed toward the child which

cause excessive pain or fear." 89 Ill. Adm. Code pt. 300, app. B (1996). Factors to be considered in determining if a real and significant danger exists are: "the child's age (children aged 6 and under are at a much greater risk of harm)[;] the child's medical condition, behavioral, mental, or emotional problems *** particularly related to his or her ability to protect himself or herself[;] the severity of the occurrence[;] the frequency of the occurrence[;] *** [and] the presence of other supporting persons in the home." 89 Ill. Adm. Code pt. 300, app. B (1996).

■ Defendants first argue that plaintiffs waived their due process claim by failing to raise it in the administrative proceedings or exhaust their administrative remedies by proceeding in *mandamus*. See *Shawgo v. Department of Children & Family Services*, 182 Ill. App. 3d 485, 490, 538 N.E.2d 234 (1989) (seeking a writ of *mandamus* is the proper remedy when DCFS fails to comply with a designated time limit). We need not address the *mandamus* question here because nothing in the record suggests that plaintiffs raised the timeliness issue either during or immediately after the proceedings. Failure to raise an issue before an administrative body—even a question of constitutional due process rights—waives the issue for review. *S.W. v. Department of Children & Family Services*, 276 Ill. App. 3d 672, 679, 658 N.E.2d 1301 (1995). "The waiver rule specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts." *Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 287, 559 N.E.2d 884 (1990). Issues not placed before the administrative agency will not be considered for the first time on administrative review. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278, 695 N.E.2d 481 (1998).

■ The transcripts here reveal that plaintiffs' counsel either himself proposed or consented to the hearing dates proposed by other parties. See *McMath v. Katholi*, 191 Ill. 2d 251, 255, 730 N.E.2d 1 (2000) (a party may not complain of error to which he consented). Also, plaintiffs do not claim that they suffered prejudice because of the length of the proceedings. We find that plaintiffs' claims are waived. But see *Sinclair v. Berlin*, 325 Ill. App. 3d 458, 468-69, 758 N.E.2d 442 (2001) (the doctrine of waiver is an admonition on the parties, not a restriction on the court). Waiver aside, we agree with defendants' contention that the procedural delays did not deprive plaintiffs of their due process rights.

Due process requirements ~ply to administrative proceedings. *Willis v. Department of Human · · 'ghts*, 307 Ill. App. 3d 317, 325, 718 N.E.2d 240 (1999), citing *Abrah    son v. Illinois Department of Professional Regulation*, 153 Ill. 2d '    92, 606 N.E.2d 1111 (1992). Statu-

tory and regulatory schemes provide recourse for a person who has been named as the subject of an indicated child abuse report and wishes to have the finding expunged from the DCFS record. The process is mandated by statute in the Abused and Neglected Child Reporting Act (Act) (325 ILCS 5/1 *et seq.* (West 1996)), and by administrative regulation in the Appeal of Child Abuse and Neglect Investigation Findings, part 336 of the Code (89 Ill. Adm. Code § 336.1 *et seq.* (1996)). Plaintiffs here were the subjects of an "indicated report," under section 336.20 of the Code. 89 Ill. Adm. Code § 336.20 (1996). When a finding is indicated, it is recorded in a DCFS central register of all suspected child abuse or neglect cases. 325 ILCS 7/7.7 (West 1996). To appeal an indicated finding and expunge the central register record, both the appellants and DCFS are subject to procedures and time limitations set out in the Code. See, *e.g.*, 89 Ill. Adm. Code §§ 336.80, 336.90 (1996).

Here, two major components of the appeals process consumed most of the 344-day time frame and so we direct our inquiry to those elements. While we note, for example, that the 30-day limit for scheduling a hearing after an appellant's written request (89 Ill. Adm. Code § 336.110(d)(1) (1996)) apparently was exceeded by 4 days, this was insignificant when compared to the other delays. The most significant departures from the prescribed time limits occurred in: (1) the duration of the administrative hearing, which lasted from December 8, 1999, to May 24, 2000—about 168 days; and (2) the length of time from the completion of the hearing record on May 24, 2000, to the ALJ's recommendation on August 7, 2000—about 72 days.

First we note that the Code does not set an optimal duration for an administrative hearing. The Code requires that the proceedings afford the parties the right to present and question witnesses, present relevant information and question or disprove information. 89 Ill. Adm. Code § 336.120(g) (1996). The Code directs the ALJ to "take necessary steps to develop a full and fair record which contains all relevant facts." 89 Ill. Adm. Code § 336.130(b)(5) (1996). The length of the hearing here did not exceed a regulatory standard. The Code also establishes 30 days as the time limit from the conclusion of the hearing until the issuance of the ALJ's written opinion and recommendation. 89 Ill. Adm. Code § 336.130(b)(14) (1996). Here, the 30-day limit was exceeded when the ALJ took 72 days to issue his recommendation.

"Technical errors in the proceedings before the administrative agency *** shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in

substantial injustice to him or her." 735 ILCS 5/3—111(b) (West 2000). "The time frames established for the administrative hearing are directory, not mandatory." *S.W.*, 276 Ill. App. 3d at 680. "Due process requires that a hearing be held 'at a meaningful time,' not within a particular time frame." *S.W.*, 276 Ill. App. 3d at 680, quoting *Gunia v. Cook County Sheriff's Merit Board*, 211 Ill. App. 3d 761, 768, 570 N.E.2d 653 (1991). In *S.W.*, the plaintiff asserted that his due process rights were violated because DCFS failed to comply with time limits, resulting in an appeals process of more than 1½ years. The court held that the plaintiff's rights were not violated, relying on *Gunia*, 211 Ill. App. 3d at 769 (a 147-day delay before the start of an administrative hearing on child abuse was not a due process violation), and *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547, 84 L. Ed. 2d 494, 507, 105 S. Ct. 1487, 1496 (1985) (a nine-month delay between the filing of an administrative appeal and its disposition did not violate due process).

The totality of the circumstances here, including the number of parties and witnesses and the gravity of the allegations, convinces us that the length of the hearing was neither a violation of the Code nor unreasonable. Both sides were entitled to develop a full and fair record containing all the relevant facts and defendants did not err in allowing the hearing to proceed at a pace that apparently was convenient to the parties. Although the record does not reveal the reason for the ALJ's delay in issuing his recommendation, it does not appear, and plaintiffs have not alleged, that prejudice resulted from the delay. As did the court in *S.W.*, we find that the delays did not constitute a violation of plaintiffs' due process rights.

■ Defendants' second argument on appeal is that the indicated finding against plaintiffs should not have been expunged even if the ALJ's report was conclusory. Plaintiffs' counsel first claimed that the ALJ's findings were conclusory in oral arguments before the circuit court. Although the circuit court made some pointed findings addressed to this argument, we do not review the findings of the trial court on administrative review. *XL Disposal*, 304 Ill. App. 3d at 207. Because this issue was raised for the first time in oral argument, it is waived for purposes of our review. See *Local Liquor Control Comm'n v. Liquor Control Comm'n*, 59 Ill. App. 3d 1, 3, 374 N.E.2d 1298 (1978) (an issue not raised in the complaint for administrative review is not preserved on appeal). But because the doctrine of waiver is not a complete limitation on review (*Sinclair*, 325 Ill. App. 3d at 468-69), we will consider plaintiff's claim of conclusory findings.

Defendants assert that the ALJ's report and resulting DCFS decision were sufficient for administrative review, citing *Mahonie v. Edgar*,

131 Ill. App. 3d 175, 178, 476 N.E.2d 474 (1985), to argue that an agency need not make specific findings of fact in its decision. Defendants also rely on *United Cities Gas Co. v. Illinois Commerce Comm'n*, 235 Ill. App. 3d 577, 586, 601 N.E.2d 1014 (1992), *inter alia*, to argue that the decision need be only specific enough to permit intelligent review. We agree with this argument.

The Code provides that the ALJ must base his recommendation on a preponderance of the evidence in an opinion containing a summary of the evidence, findings of fact, conclusions of law and a recommendation. 89 Ill. Adm. Code § 336.130(b)(14) (1996). As noted above, technical errors do not warrant reversal, unless the error materially affected the rights of a party and resulted in a substantial injustice. 735 ILCS 5/3—111(b) (West 2000).

Here, the ALJ's report contained the necessary elements—a summary of the evidence presented, findings of fact and conclusions of law, leading to the recommendation that the torture allegation against plaintiffs be expunged, but that the finding of substantial risk of physical injury remain of record. Our review of the entire record, not only the ALJ's report, convinces us that DCFS proved by a preponderance of the evidence that the children were at risk under the substantial risk of physical injury provision in the Code. 89 Ill. Adm. Code, pt. 300, app. B (1996). The recommendation of the ALJ was not against the manifest weight of the evidence and the opposite conclusion was not clearly evident.

The testimony of witnesses who said the children never fell from the bar or became exhausted from running was countered by testimony that the children did fall, were hurt, became exhausted and were spanked with a belt. The testimony of defendants' witnesses could lead a reasonable person to believe that Elizabeth and Marcelia experienced incidents of violence or intimidation, causing excessive pain and fear and threatening injury or impairment. The ALJ's conclusion that danger existed is supported by the fact that Elizabeth and Marcelia were under age six while in plaintiffs' household. It would be reasonable to conclude that the girls' physical and emotional vulnerability would have been amplified by the fact that, after being unable to protect themselves against sexual abuse by their biological father, they found themselves unable to protect themselves against the force and intimidation used as discipline by their foster father. Finally, the fact that Mrs. Lehmann chose not to be present when this unusual discipline was administered left the girls without the supportive presence of another person.

We cannot say that DCFS erred in denying plaintiffs' request to expunge the indicated report of child abuse against them. There is

evidence of record which fairly supports the agency's decision. While the evidence did not overwhelmingly favor defendants, the inconsistencies in the testimony of both Mr. and Mrs. Lehmann could reasonably cast doubt on plaintiffs' credibility, a factor the ALJ was in the best position to judge. The decision of DCFS was not against the manifest weight of the evidence. The order of the trial court is reversed. The order of DCFS denying expungement is reinstated.

Reversed; order reinstated.

McBRIDE, P.J., and GARCIA, J., concur.