2026 IL App (1st) 242405-U
No. 1-24-2405

SIXTH DIVISION
February 20, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

|  |  |  |
|---|---|---|
| | ) | Appeal from the Circuit Court of |
| DANIELA LATCO, | ) | Cook County, Illinois, County |
| | ) | Department, Chancery Division |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2024 CH 00588 |
| | ) | |
| ILLINOIS DEPARTMENT OF CHILDREN AND | ) | |
| FAMILY SERVICES, | ) | The Honorable |
| | ) | Eve M. Reilly, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The decision of the Director of the Department of Children and Family Services to deny the plaintiff's request for expungement of the indicated finding of child abuse is affirmed.

¶ 2   This matter comes before this court on appeal pursuant to Illinois Supreme Court Rule 301, stemming from a final administrative decision which denied plaintiff-appellant Daniela Latco's request to expunge defendant-appellee Illinois Department of Children and Family Services' (DCFS) indicated finding of child abuse under Allegation of Harm #11 as defined by the Illinois Administrative Code, 89 Ill. Admin. Code 300, Appendix B, and pursuant to the Abused and

Neglected Child Reporting Act ("Act"), 325 ILCS 5/1 *et seq.* Plaintiff then brought an administrative review action in circuit court to appeal the final administrative decision.

¶ 3     Following briefing and oral argument, the circuit court affirmed the final administrative decision finding that plaintiff had not met her burden to demonstrate that the decision was against the manifest weight of the evidence. Subsequently, plaintiff filed a motion to reconsider, which the circuit court denied. Plaintiff now appeals. For the following reasons, we affirm.

¶ 4                              I. BACKGROUND

¶ 5     Plaintiff was employed as a direct support professional at Little City Foundation ("LCF"), an organization that offers residential services for children with intellectual and developmental disabilities. Her job required her to work directly with LCF's residents.

¶ 6     In September 2022, during plaintiff's employment with LCF, a ten-year-old boy, D.M., was voluntarily admitted to the facility as a resident by his mother due to aggressive behaviors at home. D.M was nonverbal, diagnosed with autism and intellectual development delay, had a shunt in his head, and suffered from partial paralysis on the right side of his body. Prior to the incident in question, Plaintiff had been exposed to D.M. and knew of his disabilities.

¶ 7     On March 4, 2023, an incident between D.M. and plaintiff was caught on surveillance cameras. D.M. and plaintiff exited rooms across the hall from each other when D.M. approached plaintiff and reached with his left arm towards her face as if he was going to hit her or pull her hair. Plaintiff raised her right arm and blocked him. She then, in a second motion, used the same arm to push D.M. down to the ground. D.M fell to the floor on the left side of his body. Plaintiff looked at D.M. crying on the floor as she closed the door and walked away. Another staff member heard D.M.'s cries and helped him off the ground.

¶ 8        Three days later, on March 7, 2023, case manager Bianca Lopez noticed blue color on D.M.'s elbow. She initially thought it was a bruise and took him to the hospital. However, at the hospital, it was determined that the injury was an infection from a cut D.M. had sustained to his left elbow. D.M. was prescribed medication to treat the infection.

¶ 9                    A. DCFS Investigation and *Dupuy* Hearing

¶ 10        That day, DCFS received a hotline report from LCF regarding the incident between D.M. and plaintiff and it assigned Estrellita Mares to investigate the report. As part of Mares's investigation, she reviewed the surveillance footage, observed D.M.'s injury in person, interviewed plaintiff and two witnesses, and obtained verification of the injury from D.M.'s treating physician, Dr. Dany Mamou.

¶ 11        In plaintiff's interview, she admitted that she made contact with D.M., that she did not check on him after he fell, and that she did not file an incident report. Mares's investigative report also indicated that another LCF staff member, Michelle Blunt, reported seeing plaintiff push D.M. and that plaintiff told the staff member that D.M. tried to attack her. The verification of injury suggested that LCF staff informed Dr. Mamou that D.M. may have been injured during a recent trip to the pool and that the injury was consistent with explanation but noted that no one was unable to verify this information because D.M. was nonverbal.

¶ 12        Based upon her investigation, Mares recommended classifying the report as "indicated" for Allegation of Harm #11. Plaintiff was informed of the recommendation and provided information on DCFS's administrator's teleconference, otherwise known as a *Dupuy* hearing, via e-mail. See *Dupuy v. Samuels*, 397 F.3d 493 (2005); 89 Ill. Admin. Code §§ 300.160(c)(1)(A), (c)(3)(E) (While an alleged perpetrator may "present documentary evidence or other information that supports his or her position," the administrator's teleconference "is not a hearing and does not

involve the testimony of witnesses."). Plaintiff acknowledged that she received the documentation of DCFS's investigation and the information about the administrator's teleconference. DCFS then held the administrator's teleconference on October 10, 2023 at 9:00 a.m. before the administrator Mario Martinez.

¶ 13    Plaintiff was not present at the administrator's teleconference. Mares's investigative notes indicate that the conference line was held open for 30 minutes before proceeding but that plaintiff did not call in during that time. Plaintiff went to DCFS's office that same day, after the teleconference had concluded, to request that it be rescheduled. DCFS informed plaintiff that the meeting could not be rescheduled and informed plaintiff that she had a right to appeal at an administrative hearing.

¶ 14    On October 13, 2023, DCFS determined that credible evidence supported an indicated report of child abuse or neglect against plaintiff for Allegation #11 Cuts, Bruises, Welts, Abrasions and Oral Injuries, 89 Ill. Admin. Code 300, Reports of Child Abuse and Neglect, Appendix B. On October 27, 2024, plaintiff appealed the indicated finding and requested its expunction from the State Central Register.

¶ 15    B. Administrative Hearing, ALJ's Opinion, and Final Administrative Decision

¶ 16    On December 5, 2023, DCFS conducted an administrative hearing before Administrative Law Judge Meta Brown ("ALJ") pursuant to 5/7.16 of the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 *et seq.* (West 2018). At the hearing, DCFS called Mares and case manager Bianca Lopez as witnesses. Plaintiff was also present and testified at the hearing.

¶ 17    Mares testified about her investigation, including her observations of D.M.'s injury, review of the surveillance footage, and the substance of the interviews she conducted. Mares observed bruising on D.M.'s left elbow that was large and purple. Mares relayed that, during the interview

with plaintiff, plaintiff claimed that D.M. was agitated and had targeted her earlier in the day. Further, Mares testified that plaintiff admitted that she did not go back to check on D.M. after pushing him and she did not file an incident report.

¶ 18    On cross-examination, when asked about plaintiff's inability to access the virtual administrator's teleconference, Mares testified that she had emailed plaintiff twice regarding the administrator's teleconference. The first email provided plaintiff with the evidence which was to be relied on at the hearing, and the second email provided plaintiff with the meeting information for the hearing. Mares then testified that plaintiff later called and told Mares that "she was under the impression that [Mares] was going to be calling her for the hearing," rather than plaintiff dialing in herself despite being emailed the meeting information and instructions.

¶ 19    Also at the hearing, case manager Lopez testified about D.M.'s medical, developmental, and intellectual condition. Lopez also testified about her review of the surveillance footage. She stated that the footage showed plaintiff blocking D.M. and then pushing him with the same arm. Lopez explained that, while an employee is permitted to use self-defense tactics to protect themselves if a child physically attacks them, an employee is required to document any incident of attack or physical contact by completing an unusual incident report and reporting the incident in a chat over Microsoft Teams. Lopez stated that plaintiff's actions in raising her arm to block D.M. were appropriate, but that pushing D.M. was inconsistent with LCF's protocol.

¶ 20    Plaintiff also testified at the hearing. She stated that the incident occurred five minutes before the end of her shift and that D.M. may have been triggered by her because of an earlier incident where plaintiff had to tell him not to hit or scratch another child. While plaintiff expressed remorse that D.M. fell because of her actions, she testified that that she never intended to harm him and that he fell while walking backwards after their contact.

¶ 21		On December 20, 2023, the ALJ issued an opinion and recommendation finding that DCFS met its burden of proof by a preponderance of the evidence and recommending that the director deny plaintiff's request for expungement of the indicated finding of Allegation of Harm #11. The ALJ noted that most of the facts were undisputed and that the only issue was "whether [plaintiff's] actions constituted child abuse." In balancing the factors, the ALJ noted that plaintiff had no prior reports of abuse and that there was no evidence that she used an instrument to harm D.M. However, the ALJ took into account D.M.'s age as well as his physical and developmental disabilities, which left him particularly vulnerable to injury. While the ALJ found plaintiff credible in her testimony that she did not intend to harm D.M., the ALJ also found that plaintiff pushed him with enough force that he "fell hard" which caused bruising and a cut. Further, the ALJ noted that plaintiff violated LCF procedure both by pushing D.M. and by failing to report the incident, which led to a delay in his medical care. The ALJ also considered whether D.M.'s injury may have occurred from the pool incident but determined that there was no reliable information regarding the date, manner, or type of injury D.M. sustained at the pool to consider it a possible defense for plaintiff. Ultimately, the court found that plaintiff's actions constituted excessive corporal punishment, created a substantial risk of physical injury, and were committed while plaintiff was working in her professional capacity.

¶ 22		On January 3, 2024, DCFS's Director issued a final administrative decision adopting and incorporating the ALJ's recommendation to deny plaintiff's request for expunction of the indicated record of abuse.

¶ 23			C. Circuit Court Administrative Review Appeal

¶ 24    Thereafter, on January 30, 2024, plaintiff filed an administrative review complaint against DCFS in the Circuit Court of Cook County. After DHFS filed the record, the parties briefed the matter.

¶ 25    While plaintiff acknowledged most of the relevant facts, she claimed that, after she blocked D.M., she pulled away but that the contact "was enough for D.M. to walk backwards and fall." Plaintiff emphasized that she did not intend to hurt D.M. and stated that she "was not proud that D.M. got hurt because of [her]." She explained that she had believed the coworker who picked D.M. up from the floor was going to check him for any injuries as the incident happened at the end of her shift. For this reason, plaintiff blamed LCF for D.M.'s cut becoming infected arguing that the staff did not properly check him for injuries or take him to the hospital. She further claimed that a police officer found that she had not abused D.M. Additionally, she claimed that the DCFS investigator "manipulated or sabotage[d]" the administrator's teleconference by not admitting her into the virtual meeting.

¶ 26    In response, DCFS argued that plaintiff's argument that she did not apply force to or push D.M. improperly asked the circuit court to substitute its judgment for that of the ALJ by reweighing the conflicting evidence. DCFS also pointed out that plaintiff's argument that a police officer determined that she did not abuse D.M. conflated criminal investigations with DCFS child protection investigations which require different burdens of proof. Finally, DCFS argued that the record reflected that plaintiff received notice of the administrator's conference, the conference line was held open for 30 minutes, and plaintiff did not call in during that time.

¶ 27    Following oral argument on November 7, 2024, the circuit court issued an order affirming the final administrative decision and finding that plaintiff failed to meet her burden to show that the decision was against the manifest weight of the evidence. The court reasoned that plaintiff's

admission that she pushed D.M., combined with video evidence of the incident and testimony of D.M.'s injuries, supported the ALJ's finding.

¶ 28 Subsequently, plaintiff filed a motion for reconsideration which claimed that the indicated finding of child abuse was biased and unfair because the incident was an accident. She again reiterated her version of the facts and again claimed that the DCFS investigator lied. On November 12, 2024, the circuit court denied the motion reasoning that plaintiff failed to raise newly discovered evidence, changes in existing law, or errors in the court's application of the law. Plaintiff timely filed the instant notice of appeal on December 5, 2024.

¶ 29 II. ANALYSIS

¶ 30 The Abused and Neglected Child Reporting Act ("Act"), 325 ILCS 5/1 et seq. (West 2022), requires DCFS to investigate all reports of child abuse and neglect and to maintain a central register of those reports. *Id.* §§ 7.7, 7.12. When DCFS investigates a report, it must classify the report as indicated, unfounded, or undetermined. *Id.* § 7.12. An "indicated" report means that DCFS's investigation determines that credible evidence of abuse or neglect exists. *Id.* § 3. DCFS is required to notify the alleged perpetrator that they have been indicated. *Id.* § 7.12.

¶ 31 In cases where the alleged perpetrator is a childcare worker, DCFS must hold an administrator's teleconference, a *Dupuy* hearing, by phone before entering an indicated report. 89 Ill. Admin Code § 300.160(c)(1)(A); see *Dupuy v. Samuels*, 397 F.3d 493 (2005). At the teleconference, the alleged perpetrator may "present documentary evidence or other information that supports his or her position to assist [DCFS] in making the most accurate possible decision regarding the allegation[]." 89 Ill. Admin Code § 300.160(c)(1)(A). However, "*Dupuy* hearing" is a misnomer as it "is not a hearing and does not involve the testimony of witnesses." *Id.* § 300.160(c)(3)(E).

¶ 32    If an indicated report is entered, the alleged perpetrator may request an administrative hearing before an administrative law judge to expunge the report from the central register. See 325 ILCS 5/7.16; 89 Ill. Admin. Code § 336.120(b)(1). At the hearing, DCFS has the burden of proof to justify its refusal to expunge the record by showing that the indicated finding is supported by a preponderance of the evidence. 89 Ill. Admin. Code § 336.115(c)(2). After the hearing, the ALJ issues a written opinion and recommendation, which the DCFS Director may accept, reject, amend, or return. *Id.* §§ 336.120(b)(15), 336.220(a). The Director's decision is a final administrative decision subject to judicial review under Administrative Review Law. 325 ILCS 5/11.6 (West 2022).

¶ 33    On appeal, plaintiff does not argue that the ALJ's findings of fact were incorrect or that the ALJ committed an error in its legal analysis. Rather, in a cursory fashion, plaintiff raises a number of complaints which generally can be boiled down to a belief that she did not receive a fair hearing and she repeatedly requests a fair trial so that a judge can "get all the facts" and hear her "side of the story." Without any reference to evidence, the record, or legal authority, plaintiff contends as follows: (1) all the arguments she brought in her defense were considered improper, (2) she was cut off from the meeting call and was not allowed to speak, (3) DCFS was allowed to bring in fabricated evidence, and (4) the DCFS investigator manipulated the administrator's teleconference by claiming that she did not call into the meeting. The above arguments are stated in a single-sentence paragraph. Additionally, in similar fashion, plaintiff contends that DCFS and LCF accused her of abuse to "cover their backs" rather than fix their own shortcomings. Plaintiff does not elaborate on these supposed "shortcomings," nor does she explain how if these shortcomings were remedied, she would not have been indicated for abuse under Allegation of Harm #11.

¶ 34    Any issue raised but not clearly defined or sufficiently presented through citation to relevant authority fails to meet the requisites of Illinois Supreme Court Rule 341(h)(7) and is, therefore, deemed waived. See e.g., *Vincent v. Doebert*, 183 Ill. App. 3d 1081, 1087 (2d Dist. 1989). Rule 341(h)(7) provides that appellate briefs shall include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. Sup. Ct. R. 341(h)(7). Moreover, "[a] reviewing court deserves the benefit of cohesive legal argument, and is not a dumping ground for argument and research." *Rockwood Holding Company v. Department of Revenue*, 312 Ill. App. 3d 1120, 1132 (1st Dist. 2000); *In re Marriage of Auriemma*, 271 Ill. App. 68, 72 (1st Dist. 1994) (" 'The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " (quoting *Thrall Car Manufacturing Co. v. Linquist*, 145 Ill. App. 3d 712, 719 (1st Dist. 1986)). While we are sympathetic that plaintiff is representing herself *pro se*, we must deem her arguments as waived as they do not amount to cohesive legal argument that is clearly defined and sufficiently presented.

¶ 35    Notwithstanding the foregoing, we note that to the extent that plaintiff argues that the final administrative decision relied upon inadmissible evidence, the record demonstrates that this is not the case. Although plaintiff claimed that DCFS was permitted to "bring in all the fabrications" it could, the record demonstrates that the ALJ refused to rely on DCFS's photographs of D.M.'s injury as evidence reasoning that DCFS failed to lay a proper foundation for the photographs. The ALJ ultimately noted that the photographs were not essential to DCFS's case because the medical records and witnesses' testimony established that D.M. sustained a cut and bruising to his left elbow.

¶ 36          Furthermore, while plaintiff has consistently maintained that she called into the administrator's teleconference but was not admitted into the meeting, there is no evidence in the record that DCFS did not follow the proper technical or procedural steps. Plaintiff did not provide testimony or evidence regarding what time she called into the meeting, the number that she dialed, or question Mares on the number that was used for the administrator's teleconference. On the other hand, Mares's testimony, which was subject to cross-examination, indicates that the administrator's teleconference was properly conducted according to the Administrative Code. See 89 Ill. Admin. Code 300.160(c)(2)(D), (c)(3)(B), (c)(4)(F) (requiring DCFS to provide the meeting information, obtain acknowledgment of teleconference from the alleged perpetrator, and to wait for at least 30 minutes for the alleged perpetrator to call). Mares testified that she e-mailed plaintiff the meeting information, that plaintiff acknowledged receipt of the information, and that the meeting was held open waiting for plaintiff before the administrator proceeded. Mares's investigative file confirms her testimony that plaintiff acknowledged receipt of the meeting information and that the meeting was held open for 30 minutes before proceeding with the administrator's teleconference. Aside from plaintiff's general assertion that she called into the meeting, there is no evidence in the record to support this.

¶ 37          Moreover, even if DCFS committed an error in either failing to provide proper notice or failing to allow plaintiff an opportunity to present documentary evidence or other information at the administrator's conference, plaintiff was provided proper notice and an opportunity to defend herself at the administrative hearing. Plaintiff was present at the administrative hearing where she was permitted to testify, cross-examine, and introduce evidence. Further, DCFS bore the burden of proof to justify its refusal to expunge the record. Thus, plaintiff was given a full and fair hearing and her rights were not materially affected. See 735 ILCS 5/3-111(b) ("Technical errors in the

proceedings shall not constitute grounds for reversal of the administrative decision unless *** such error *** materially affected the rights of any party and resulted in substantial injustice to him or her"); *Lehmann v. Department of Children and Family Services*, 342 Ill. App. 3d 1069, 1078-80 (1st Dist. 2003) (finding that a failure to follow the statutory timeframe for the administrative hearing and issuance of the ALJ's written opinion and recommendation did not warrant reversal because both sides were granted a full and fair hearing and neither was prejudiced).

¶ 38                                     III. CONCLUSION

¶ 39        For the foregoing reasons, we affirm the judgment of the circuit court which affirmed the decision of the Director of DCFS to deny plaintiff's request to expunge the indicated finding of child abuse for Allegation of Harm #11.

¶ 40        Affirmed.