# Illinois Official Reports

## Appellate Court

---

### *Jankovich v. Illinois State Police*, 2017 IL App (1st) 160706

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL JANKOVICH, Plaintiff-Appellant, v. THE ILLINOIS STATE POLICE and THE ILLINOIS CONCEALED CARRY LICENSING REVIEW BOARD, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-0706 |
| Filed | April 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-11615; the Hon. Moshe Jacobius, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Samuel A. Shelist, of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Mary C. LaBrec, Assistant Attorney General, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Michael Jankovich appeals from the rejection of his application for a concealed-carry license under the Firearm Concealed Carry Act (Act) (430 ILCS 66/1 *et seq.* (West 2014)) by defendants the Illinois State Police (ISP) and the Concealed Carry Licensing Review Board (Board) (collectively, defendants). The Chicago police department and Cook County sheriff's office filed objections to plaintiff's application, which the Board affirmed. Plaintiff then filed a petition for review of the Board's decision in the circuit court of Cook County, which the circuit court denied.

¶ 2    On appeal, plaintiff argues (1) that the trial court incorrectly found that the second amendment does not protect the right to carry a concealed firearm and, as a result, applied the improper level of scrutiny to the Act; (2) that the Board improperly relied on a rap sheet and police reports, which were inadmissible hearsay; (3) that the standard applied by the Board in denying his license violates the second amendment and is unconstitutionally vague; and (4) if the Board could rely on hearsay evidence under the Act, the Act's allowing such reliance violates his constitutional rights.

¶ 3    We affirm. We hold that the Board did not err in considering the rap sheet or police reports, as the Act contemplates the Board relying on such evidence. We hold that the Act's standard for denying a license, based on an applicant posing a danger to himself or others or a threat to public safety, is consistent with the second amendment and is not unconstitutionally vague. We finally hold that plaintiff's inadequate argument that the Board's reliance on hearsay violated his constitutional rights merits no consideration.

¶ 4                                        I. BACKGROUND

¶ 5    In order to provide better context for the facts and procedural history of this case, we first explain the statutory scheme for issuing concealed carry licenses under the Act.

¶ 6                                          A. The Act

¶ 7    The Act charges ISP with issuing and denying licenses to carry concealed firearms. 430 ILCS 66/10 (West 2014). The Board, which exists within ISP, is composed of seven commissioners with specific qualifications: one with at least five years' service as a federal judge, two with at least five years' experience as attorneys in the United States Department of Justice, three with at least five years' experience as federal agents, and one with at least five years' experience as a licensed physician or clinical psychologist with expertise in mental illness. 430 ILCS 66/20(a) (West 2014).

¶ 8    Under section 25 of the Act (430 ILCS 66/25 (West 2014)), an applicant for a concealed carry license must have six qualifications: (1) be at least 21 years old; (2) have a current, valid Firearm Owner's Identification (FOID) Card and meet the requirements for the issuance of a FOID Card; (3) have not been convicted of a misdemeanor involving the use or threat of physical force or violence or two or more drug- or alcohol-related offenses in the past five years; (4) not be subject to a pending arrest warrant or prosecution; (5) have not been in residential or court-ordered alcohol or drug treatment for the last five years; and (6) have completed firearms training and education under the Act. *Id.*

¶ 9    The Act further provides that the ISP "shall issue a license to carry a concealed firearm" to an applicant who:

> "(1) meets the qualifications of Section 25 of [the] Act;
>
> (2) has provided the application and documentation required in *** this Act;
>
> (3) has submitted the requisite fees; and
>
> (4) *does not pose a danger to himself, herself, or others, or a threat to public safety as determined by the *** Board in accordance with Section 20*." (Emphasis added.) 430 ILCS 66/10(a) (West 2014).

¶ 10    Once an application is filed, ISP must perform a background check on the applicant. 430 ILCS 66/35 (West 2014). Additionally, "[a]ny law enforcement agency may submit an objection to a license applicant based upon a reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." 430 ILCS 66/15(a) (West 2014).

¶ 11    The Board is tasked with hearing any law enforcement objections to an application. 430 ILCS 66/20(a), (e) (West 2014). The Board can request additional information from the law enforcement agency that submitted the objection, ISP, or the applicant. 430 ILCS 66/20(e) (West 2014). The Board "shall affirm the objection" and deny the applicant a license "[i]f the Board determines by a preponderance of the evidence that the applicant poses a danger to himself or herself or others, or is a threat to public safety." 430 ILCS 66/20(g) (West 2014).

¶ 12    When the Board denies an application, the applicant may petition the circuit court for a hearing on the denial. 430 ILCS 66/87(a) (West 2014). The Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)) governs the review of Board decisions in circuit court. 430 ILCS 66/87(b) (West 2014).

¶ 13                    B. Procedural History of This Case

¶ 14    Plaintiff filed his application on April 14, 2014. The application included 15 questions relating to plaintiff's criminal history, history of substance use, and mental capacity. Plaintiff answered "no" to all of the questions, indicating that he met most of the six qualifications for a concealed carry license under section 25.

¶ 15    As part of its background check, ISP compiled defendant's rap sheet from the Law Enforcement Agencies Data System (LEADS). See 20 Ill. Adm. Code 1240.10(a) (1999) (describing LEADS as "a statewide, computerized telecommunications system designed to provide services, information, and capabilities to the law enforcement and criminal justice community in *** Illinois").

¶ 16    The Chicago police department objected to plaintiff's application, saying that the department had a reasonable suspicion to believe that plaintiff was a threat to public safety. In support of its objection, the department attached police reports relating to three incidents involving plaintiff.

¶ 17    The first incident occurred on July 13, 2010, when plaintiff allegedly kicked and punched an individual using "metal knuckles." The victim said that plaintiff "caused injury to his face" and cracked one of his teeth. The officer reported that he "observed swelling." A supplementary report indicated that the officers could not reach the victim by phone or at his address. The officer recommended that the case be suspended pending contact with the victim.

¶ 18     The second incident occurred on February 7, 2011. The report said that the victim had damaged some of plaintiff's signs for his campaign for alderman of the 43rd ward of Chicago. In response, defendant allegedly called the victim and said:

> "I am going to have some officers come over there and arrest you if you do not pay and if not, I'm gonna [*sic*] have some of my guys come over there and bust your head open and break your legs while I'm eating my dinner … it's nothing to me."

A supplementary report said that the victim did not want to have plaintiff arrested and charged because "he had heard from people in the Bridgeport neighborhood that [plaintiff] would make good on his threats." The victim eventually stopped returning the detective's calls, and the detective recommended that the investigation be suspended.

¶ 19     The third incident occurred on September 17, 2012, when plaintiff allegedly called one of his employees and said, "I'm going to put you in a wood chipper and six feet underground if you don't stop calling about the money." A detective recommended suspending the investigation because the victim said that the calls stopped and that he did not need any further police assistance.

¶ 20     The Cook County Sheriff objected shortly after the Chicago police, also claiming a reasonable suspicion that plaintiff was a danger to others and a threat to public safety. The sheriff attached a Chicago police criminal history report for defendant to support its objection. That report indicated that plaintiff had been arrested 18 times. But only one of those arrests led to a conviction: a 1992 conviction for criminal damage to property, for which plaintiff received probation. The sheriff highlighted four arrests which did not lead to convictions: a 2009 arrest for assault, 1990 and 1991 arrests for battery, and a 1989 arrest for assault. The State nol-prossed the 2009 assault charge and the other three charges were all stricken off of the docket with leave to reinstate.

¶ 21     Based on these objections, the Board initially denied plaintiff's application for a license, and plaintiff sought administrative review of that decision in circuit court. Instead of answering the complaint, defendants sought remand of the matter to the Board in light of new administrative rules promulgated by ISP, which required the Board to notify applicants of any objections to license applications and to give licensees the opportunity to respond to those objections. See 20 Ill. Adm. Code 2900.140(e)(1) (2015). The circuit court remanded the matter to the Board.[1]

¶ 22     Then, in a letter dated May 7, 2015, in accordance with the new administrative rules, the Board formally notified plaintiff that it had received these objections from the Chicago police department and Cook County Sheriff. The Board detailed the specifics of these objections, not materially differently than we have described above, and informed plaintiff as follows:

> "After the Board receives an objection, it statutorily has 30 days to issue a decision. However, when the Board requests additional information from the applicant, it has 30 days from the date that it receives such information to issue a decision. A majority of the Board determined that the objection filed against you appears sustainable and that it

---

[1]Plaintiff objected to the remand, even though the remand gave plaintiff an opportunity, under the new ISP administrative rules, to respond to the objections raised by the law enforcement agencies. In any event, plaintiff does not raise the initial remand by the circuit court as a point of error before us, nor does he raise any challenge to the application of those new administrative rules to his case.

needs additional information from you in order to reach an informed decision concerning your application. ***

Pursuant to 20 Ill. Admin. Code 2900.140(e)(1), you now have 15 days from the date of receipt of this notice *to submit any relevant evidence to the Board for its consideration* before a final administrative decision is rendered regarding your application." (Emphasis added.)

¶ 23 On May 16, 2015, plaintiff wrote a 2-sentence response to the Board. In his first sentence, he wrote that he "has not been CONVICTED OR FOUND GUILTY as noted in the Statute" (emphasis in original) and then quoted a portion of section 25 of the Act which, as we recited above (*supra* ¶ 8), provides the preliminary qualifications for licensure, including that the applicant not have been convicted of a misdemeanor involving the use or threat of physical force or violence or two or more drug- or alcohol-related offenses in the past five years. See 430 ILCS 66/25 (West 2014).

¶ 24 In his second sentence, plaintiff wrote: "There being no basis in the Statute, and [plaintiff] is not a danger to safety, we ask for a hearing."

¶ 25 On June 13, 2014, the Board notified plaintiff that it had affirmed the objections and "determined that [plaintiff was] a danger to [himself], [was] a danger to others, or pose[d] a threat to public safety." Plaintiff filed an amended petition for administrative review in the circuit court.

¶ 26 Plaintiff argued that the Board improperly relied on hearsay evidence in reaching its decision, that the record supported his application for a license, and that the Board's reliance on hearsay infringed on his right to bear arms under the second amendment. Defendants argued that there was sufficient evidence to support the Board's finding based on the reports submitted with the objections, and that the Board could base its decision on those reports.

¶ 27 The court denied plaintiff's petition. The court found that "the right to carry a concealed firearm in public is not an interest specifically protected by the Second Amendment." The court also found that, even if the second amendment protected the right to carry a concealed firearm, the Act "would pass intermediate scrutiny," noting that the application review process protected Illinois's strong interest in "preserv[ing] the general safety of its citizens in public spaces." The court found that sufficient evidence supported the Board's decision to deny plaintiff's application.

¶ 28 Plaintiff filed this appeal.

¶ 29                                II. ANALYSIS

¶ 30 As we noted above, judicial review of the denial of a concealed carry license by the Board proceeds under the Administrative Review Law. 430 ILCS 66/87(b) (West 2014). In cases arising under the Administrative Review Law, we review the administrative agency's decision, not the decision of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009). Our standard of review turns on whether the issue resolved by the agency was a question of fact, a question of law, or a mixed question of law and fact. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005).

¶ 31 We review an agency's conclusion on a question of law *de novo*. *Id.* When the agency resolves a question of fact, we defer to that resolution and will reverse it only if it is against the manifest weight of the evidence. *Id.* at 471-72. When the issue involves a mixed question of

law and fact, *i.e.*, "whether established facts satisfy applicable legal rules," we apply a clear-error standard, which defers "to an agency's experience in construing and applying the statutes that it administers." *Id.* at 472.

¶ 32   Plaintiff raises several challenges both to the circuit court's decision and the Board's decision: (1) that the trial court incorrectly found that the second amendment does not protect the right to carry a concealed firearm and, as a result, applied the improper level of scrutiny to the Act; (2) that the Board improperly relied on the LEADS rap sheet and the Chicago police department reports, which were inadmissible hearsay; (3) that the Act's dangerousness standard violates the second amendment and is unconstitutionally vague; and (4) if the Board could rely on hearsay evidence under the Act, the Act's allowing such reliance violates his constitutional rights. We address each of these arguments in turn.

¶ 33                    A. Circuit Court's Second Amendment Analysis

¶ 34   Plaintiff raises two arguments relating to the trial court's findings. First, he argues that the trial court incorrectly found that the second amendment does not protect a right to carry a concealed firearm outside the home. Second, he claims that the trial court incorrectly applied the intermediate-scrutiny standard in its second-amendment analysis. In fact, the heading of every single argument begins with an explanation of how the "circuit court erred."

¶ 35   As we noted above, on administrative review, our concern is not the trial court's analysis; it is the administrative agency's decision. *Exelon Corp.*, 234 Ill. 2d at 272. Thus, the accuracy of the circuit court's second-amendment analysis in this case has no bearing on the outcome.

¶ 36   Plaintiff does not contend that some error by the circuit court deprived him of his ability to obtain circuit court review under the Administrative Review Law. Nor does he request a new circuit court hearing. He only takes issue with the merits of the Board's appeal as analyzed by the trial court. Because the trial court's analysis is unimportant in resolving the merits of plaintiff's arguments, we decline to address it.

¶ 37                    B. Reliance on LEADS Rap Sheet and Police Reports

¶ 38   Next, plaintiff contends that the Board improperly relied on ISP's LEADS rap sheet and police reports in denying his application. Plaintiff claims that these documents contained hearsay and that the Board may not consider hearsay, both under its own rules and under general principles of administrative law. For purposes of this section, we do not address plaintiff's argument that the use of hearsay violates his second amendment rights; we reserve the constitutional issues for a later section.

¶ 39   Whether the Act permits the agency to consider both the rap sheet and the reports in its determination requires us to interpret the Act. Questions of law we review *de novo*. *Brunton v. Kruger*, 2015 IL 117663, ¶ 24.

¶ 40                    1. *LEADS Rap Sheet*

¶ 41   We turn first to the use of the LEADS rap sheet. Plaintiff contends that the Board's own rules prohibit it from relying on LEADS. We find, however, that plaintiff's argument reflects a fundamental misunderstanding of the applicable administrative rule.

¶ 42   To explain why, we must first clarify that the Act differentiates between the ISP and other "law enforcement agencies." Specifically, the Act defines the " 'Department' " as ISP,

whereas a " 'Law enforcement agency' " is defined as "any federal, State, or local law enforcement agency, including offices of State's Attorneys and the Office of the Attorney General." 430 ILCS 66/5 (West 2014).

¶ 43   These bodies play different roles. The ISP must conduct a background check on every applicant for a license. 430 ILCS 66/35 (West 2014) ("The Department shall conduct a background check of the applicant to ensure compliance with the requirements of this Act and all federal, State, and local laws."). "Law enforcement agencies," on the other hand, may file objections to the license application with ISP if that objection is "based upon a reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." 430 ILCS 66/15(a) (West 2014).[2]

¶ 44   Sticking for the moment with the ISP's role, section 35 of the Act directs ISP, in conducting that mandatory background check, to use, among other sources, "all available state and local criminal history record information files." 430 ILCS 66/35(2) (West 2014). And LEADS "is a statewide, computerized telecommunications system designed to provide services, *information*, and capabilities to the law enforcement and criminal justice community in the State of Illinois." (Emphasis added.) 20 Ill. Adm. Code 1240.10(a) (1999). All policing bodies in the State of Illinois must transmit information concerning arrests, charges, and dispositions of charges to ISP. 20 ILCS 2630/2.1(a)-(c) (West 2014). Moreover, various statutes require agencies to submit a host of other information to LEADS. See, *e.g.*, 50 ILCS 722/10(a)(3)(A) (West 2014) (missing persons information); 55 ILCS 5/3-6019 (West 2014) (warrants); 740 ILCS 22/302(a) (West 2014) (civil no contact orders); 750 ILCS 60/302(a) (West 2014) (orders of protection).

¶ 45   Because section 35 requires ISP to search all available state criminal history information files, and LEADS is a compilation of criminal justice information, it follows that, as part of the background check in section 35, the ISP is authorized to check LEADS.

¶ 46   And it thus also follows that the Board may consider LEADS information when called upon to consider objections to the license application—the whole reason for the Board's existence. The Act provides as much in more than one place in the statutory scheme. Section 15 provides that "[i]f a law enforcement agency submits an objection [to a license application] ***, the Department shall submit the objection *and all information available to the Board under State and federal law related to the application* to the Board within 10 days of completing all necessary background checks." (Emphasis added.) 430 ILCS 66/15(a) (West 2014). Likewise, section 20 provides that the Board, in considering objections by law enforcement agencies, may "consider information *submitted by the Department*, a law enforcement agency, or the applicant." (Emphasis added.) 430 ILCS 66/20(e) (West 2014). Thus, contrary to plaintiff's claim, the Board may consider LEADS information as much as it may consider any other relevant information.

¶ 47   Plaintiff's claim that the Board is prohibited from considering LEADS information is based on this administrative rule:

> "Criminal history background checks for all [license] applicants will be conducted by the Department. Law enforcement officials who wish to raise an objection to an ***

_____

[2]For the sake of complete accuracy, the ISP may also object to a license application, but only in limited instances not relevant to this case. See 430 ILCS 66/15(b) (West 2014).

applicant shall not use LEADS to run background checks to determine \*\*\* eligibility." 20 Ill. Adm. Code 1231.70(a) (2014).

¶ 48 First of all, that rule says nothing about what the Board can or cannot consider. It is not a limitation on the Board whatsoever. Second, the passage on which plaintiff relies does not restrain what the ISP—"the Department"—may use when conducting its mandatory background check; it only constrains what the other law enforcement agencies may use in determining whether to submit an objection to the license application. The ISP easily could have written this rule to constrain itself, and the Board, similarly, had it wished to do so. The plain language of the rule does not support plaintiff's position.

¶ 49 And restricting outside law enforcement agencies to information other than LEADS data makes sense. If ISP must run a background check of every applicant, and ISP has a duty to check all available state criminal history information when doing so, then ISP will likely check LEADS—its own criminal history database. Prohibiting other law enforcement agencies from "us[ing] LEADS to run background checks" is doing nothing more than preventing the Board from receiving duplicative data, a perfectly reasonable aim of an administrative rule.

¶ 50 Here, the LEADS rap sheet delivered to the Board was not included with the objections filed by the Chicago police or the Cook County sheriff. Rather, it was part of ISP's background check on plaintiff. Because the rule restrains only the use of LEADS rap sheets in making objections, which is a distinct procedure from ISP's background checks, ISP's submission of the rap sheet in this case did not run afoul of its rules, nor did the Board's consideration of that information.

¶ 51 *2. Police Reports*

¶ 52 Plaintiff also contends that the Board erred in relying on the police and arrest reports submitted by the Chicago police department and Cook County sheriff in support of their objections to his application. Plaintiff contends that hearsay is inadmissible in administrative proceedings and that police reports and arrest reports do not fall into any recognized exceptions to the rule against hearsay.

¶ 53 At the outset, we agree with plaintiff that the police reports submitted by the Chicago police department and the criminal history report submitted by the Cook County sheriff contained hearsay evidence. Those documents consisted of outside statements that could only be relevant if they were true. See Ill. R. Evid. 801(c) (eff. Jan. 1, 2011) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

¶ 54 We also recognize that, as a general matter, hearsay evidence is not admissible in an administrative proceeding. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 94 (1992); see also 5 ILCS 100/10-40(a) (West 2014) (in administrative proceedings, agencies should follow rules of evidence applicable in civil cases in circuit courts). But administrative agencies are creatures of statute (*County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 554 (1999)), and, as such, the legislature may define or alter the rules of evidence applicable to an agency's proceedings. See, *e.g.*, *Cook County Board of Review v. Property Tax Appeal Board*, 339 Ill. App. 3d 529, 535 (2002) (enabling statute for property tax appeal board " 'eliminate[d] formal rules of pleading, practice and evidence' " (quoting 35 ILCS 200/16-180 (West 2000))).

¶ 55    So the question is whether the Act allows the Board to consider hearsay evidence submitted with a law enforcement agency's objection to a concealed carry license. In our recent decision in *Perez v. Illinois Concealed Carry Licensing Review Board*, 2016 IL App (1st) 152087, ¶ 24, we held that "the Act establishes the intent to permit the admission of hearsay evidence before the Board for considering a concealed carry license application." Looking to several provisions of the Act, we found that "the Act permits *** an exception [to the rule against hearsay] because it requires the [ISP] as well as the Board to consider an applicant's criminal history, including arrests, when reviewing an application." *Id.* (citing 430 ILCS 66/15(a), 20(e), 35(2) (West 2014)).

¶ 56    We adhere to our holding in *Perez*. The Act says that, when considering a law enforcement objection, the Board should "review the materials received with the objection from the law enforcement agency." 430 ILCS 66/20(e) (West 2014). And it says that, when making an objection, a law enforcement agency "must include any information relevant to the objection." 430 ILCS 66/15(a) (West 2014). Thus, the Act contemplates the submission of a wide range of information by law enforcement.

¶ 57    Moreover, section 15(b) of the Act (430 ILCS 66/15(b) (West 2014)) expressly contemplates that, in a specific context, the Board should consider arrest records. That section states that, when an applicant has five or more arrests in the seven years preceding his application, ISP "shall object and submit the applicant's *arrest record* *** and any additional information submitted by a law enforcement agency to the Board." (Emphasis added.) *Id.* Thus, the legislature authorized the Board to consider arrest records when an applicant has a certain number of arrests. It stands to reason that, even when an applicant has fewer arrests in his background, such records would still be among the wide variety of information the Board could consider in weighing an objection. If the Act specifically contemplates the use of arrest records when the applicant has a certain number of them within a recent time frame, it would be nonsensical to read the statute as categorically barring them as inadmissible hearsay simply because there are less of them, or because they happened earlier in time.

¶ 58    Plaintiff contends that *Perez* is distinguishable because the plaintiff in that case had forfeited his hearsay argument. While plaintiff is correct that the plaintiff in *Perez* forfeited his hearsay argument (*Perez*, 2016 IL App (1st) 152087, ¶ 23), the court still reached the merits of that argument (*id.* ¶ 24). And as we explained above, we find the analysis of *Perez* to be persuasive in light of the language of the Act.

¶ 59    Plaintiff also claims that *Perez* is distinguishable because the hearsay evidence in *Perez* was "from 2011, and at most from 2007," whereas the arrests at issue in this case were much older. But plaintiff has not explained how the age of a document affects a hearsay objection, why a more recent document should be able to overcome a hearsay objection but an older document should not. Plaintiff also ignores that, in this case, the Chicago police department's objection cited three incidents occurring between 2010 and 2012. The Cook County sheriff cited four arrests occurring in 2009, 1991, 1990, and 1989. Thus, contrary to plaintiff's claim, the evidence supporting the objections was not "desk reports some 30-years old."

¶ 60    We hold that the Board properly considered the police reports and criminal history report submitted by the Chicago police department and the Cook County sheriff.

¶ 61                              C. The Dangerousness Standard

¶ 62        Plaintiff raises two constitutional challenges to the Act's standard for assessing law enforcement objections, found in section 20(g) of the Act:

> "If the Board determines by a preponderance of the evidence that the applicant poses a danger to himself or herself or others, or is a threat to public safety, then the Board shall affirm the objection of the law enforcement agency or the Department and shall notify the Department that the applicant is ineligible for a license." 430 ILCS 66/20(g) (West 2014).

Plaintiff contends that this dangerousness standard violates both his right to bear arms under the second amendment to the United States Constitution (U.S. Const., amend. II), and his constitutional rights to due process of law (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) because it is impermissibly vague.

¶ 63        Statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute bears the burden of proving that the statute is unconstitutional. *People v. Aguilar*, 2013 IL 112116, ¶ 15. We have a duty to construe any statute in a manner that upholds the statute's constitutionality. *Id.* We apply *de novo* review. *Id.* We now turn to each of plaintiff's arguments.

¶ 64                                  1. *Right to Bear Arms*

¶ 65        Plaintiff argues that the dangerousness standard violates his right to bear arms because it is not a "concrete standard" justifying the State's intrusion on his right to bear arms. He contends that the standard is not narrowly circumscribed to serve the State's interest in preserving public safety.

¶ 66        At the outset, plaintiff never clarifies for us whether he is mounting a facial or as-applied challenge to the Act. Without ever once specifying one challenge or the other, his argument seems to veer between the two concepts. We would be within our rights to declare this argument forfeited for failing to properly focus our attention on the appropriate challenge, but instead we will address each challenge.

¶ 67        A party challenging the facial constitutionality of a statute bears the burden of showing that the statute is unconstitutional in all its applications—that under no set of circumstances could the statute be applied in a constitutional manner. *People v. Burns*, 2015 IL 117387, ¶ 27; *People v. Wiggins*, 2016 IL App (1st) 153163, ¶ 75. An " 'as applied' " constitutional challenge, on the other hand, requires a defendant to show that the statute violates the constitution as it applies to him. *People v. Garvin*, 219 Ill. 2d 104, 125 (2006); *Wiggins*, 2016 IL App (1st) 153163, ¶ 75. Of course, if a statute is constitutional as applied to a plaintiff, a facial challenge will necessarily fail, too, because that means there is at least one set of facts where the statute may be constitutionally applied. *Garvin*, 219 Ill. 2d at 117. Thus, it makes sense to begin with consideration of an as-applied challenge, because if we find that the Act was applied constitutionally to plaintiff, then the facial challenge will necessarily fail as well; we will have found at least one set of circumstances where the Act was applied constitutionally. See *Wiggins*, 2016 IL App (1st) 153163, ¶¶ 75, 87.[3]

---

[3]At oral argument, plaintiff's counsel said he was mounting a facial challenge to the Act, though he did not address whether he was raising an as-applied challenge, too. It makes no difference. It still

¶ 68    We apply a two-step approach to a second-amendment challenge. *People v. Mosley*, 2015 IL 115872, ¶ 34. First, we look to the text and history of the second amendment "to determine whether the challenged law imposes a burden on conduct that was understood to be within the scope of the second amendment's protection at the time of ratification." *Id.* If the conduct is not within the scope of the second amendment, then the regulated activity "is categorically unprotected." *Id.* But if the historical evidence is inconclusive or suggests that the regulated activity is not unprotected, then we apply "the appropriate level of means-ends scrutiny" and consider "the strength of the government's justification for restricting or regulating the exercise of second amendment rights." *Id.*

¶ 69    With respect to the first step, in *Aguilar*, 2013 IL 112116, ¶ 21, our supreme court recognized that "the second amendment protects the right to possess and use a firearm for self-defense outside the home." Thus, the second amendment generally protects plaintiff's right to carry a ready-to-use gun outside the home. The question, then, is whether the Act's dangerousness standard impermissibly encroaches on that right.

¶ 70    Plaintiff does not claim that the existence of the licensing scheme, in and of itself, violates the second amendment. And for good reason. It is well established that, as a general matter, requiring an individual to obtain a license to possess a firearm—whether inside the home or beyond—is a reasonable regulation of the right to bear arms. *Mosley*, 2015 IL 115872, ¶ 36; *Wiggins*, 2016 IL App (1st) 153163, ¶¶ 79-81. And in *Berron v. Illinois Concealed Carry Licensing Review Board*, 825 F.3d 843, 847 (7th Cir. 2016), the Seventh Circuit Court of Appeals held that requiring individuals to obtain concealed carry licenses under the Act did not violate the second amendment. Thus, the mere fact that plaintiff had to apply for a license before he could carry a concealed firearm did not, by itself, violate plaintiff's rights under the second amendment.

¶ 71    Nor does plaintiff claim that the State would violate the second amendment by prohibiting a person who *truly* poses a danger or threat to society from carrying a gun outside the home. Again, for good reason. Since *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008), the United States Supreme Court has emphasized that second amendment rights are not absolute, and that traditional prohibitions on gun ownership for people such as felons or the mentally ill were almost certainly constitutional. Our supreme court in *Aguilar*, in determining that minors could be prevented from possessing guns, relied on our country's " 'longstanding practice of prohibiting certain classes of individuals from possessing firearms—*those whose possession poses a particular danger to the public*.' " (Emphasis added.) *Aguilar*, 2013 IL 112116, ¶ 27 (quoting *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009)). It is hard to imagine a person who falls more squarely into the group of individuals who "pose[ ] a particular danger to the public" (internal quotation marks omitted) (*id.*) than one who is found by the Board, by a preponderance of the evidence, to "pose[ ] a danger to himself or herself or others" or to be a "threat to public safety." 430 ILCS 66/20(g) (West 2014).

¶ 72    But while plaintiff does not object to a licensure regimen, or to the denial of licenses to people who are truly dangerous, he maintains that section 20(g) violates the second amendment because the standard—"that the applicant poses a danger to himself or herself or others, or is a threat to public safety" (430 ILCS 66/20(g) (West 2014))—"is a 'standard

___

makes sense to begin with an as-applied challenge because if it is unsuccessful, it represents an example where the Act could be constitutionally applied, thereby defeating the facial challenge.

without standards' which leaves the State with *unfettered* discretion to interdict a Constitutional right." (Emphasis in original.)

¶ 73    The problem for plaintiff, however, is that in an as-applied challenge, plaintiff must show that this standard was applied unconstitutionally to his case (*Garvin*, 219 Ill. 2d at 117; *Wiggins*, 2016 IL App (1st) 153163, ¶ 75), but he did next to nothing to challenge the strength or soundness of the Board's finding of dangerousness below.

¶ 74    As we chronicled above (*supra* ¶¶ 21-24), the case was remanded to the Board so that plaintiff would receive specific notice of the objections made by law enforcement agencies, and so plaintiff would have the opportunity to respond. The Board listed out the specific objections to plaintiff's application and gave him 15 days "to submit any relevant evidence to the Board for its consideration."

¶ 75    To say the very least, plaintiff did not appropriately seize this opportunity. He responded with a two-sentence letter to the Board. The first sentence was not "relevant evidence" at all. It was a legal argument, claiming that because he was never *convicted* of those incidents cited by law enforcement agencies, they had no bearing on the qualification factors in section 25 of the Act. That argument was wrong as a legal proposition—apart from section 25, section 20 of the Act spells out that the Board must deny an application if the applicant is deemed a danger to himself or others after law enforcement officials object (430 ILCS 66/20(g) (West 2014))—but the bigger point is that this legal argument did not even remotely address, as a factual matter, the information submitted by the two objecting law enforcement agencies. And the second sentence was even less helpful—plaintiff merely stated that, "There being no basis in the Statute, and [plaintiff] is not a danger to safety, we ask for a hearing."

¶ 76    So on the one hand, the Board had been presented with information from two law enforcement agencies that plaintiff was alleged to have committed the following acts: (1) he threatened to put an individual "in a wood chipper and six feet underground" if that individual did not stop bothering plaintiff about an issue concerning money in 2012; (2) he threatened to "bust [a man's] head open" and "break [his] legs" for damaging some of plaintiff's campaign signs in 2011; (3) he kicked and punched an individual with brass knuckles in 2010; and (4) he had been arrested 18 times, including a 1992 conviction for criminal damage to property and arrests for assault and for battery.

¶ 77    No doubt, none of these acts (save one) led to a conviction, and many were not charged at all. But it is fair to say that Board members might have found some of these allegations to be particularly disturbing about a man seeking now to arm himself in public. And that is precisely why plaintiff's response—his opportunity "to submit any relevant evidence to the Board for its consideration"—was so crucial.

¶ 78    Plaintiff could have said in response, for example, that he did not commit any of these acts, that he was utterly innocent. He could have said that some or all of these incidents were accompanied by specific circumstances that mitigated his actions or absolved him entirely. He might have explained that the alleged victims had ulterior motives—grudges or reasons to fabricate their stories. He could have submitted the names of, if not affidavits or statements from, eyewitnesses who would exonerate him. He might have made the case that the past was the past, that he was a changed man. He could have done any number of things to attempt to convince the Board that he did not, at this time, "pose[ ] a danger to himself *** or others" and that he was not "a threat to public safety." 430 ILCS 66/20(g) (West 2014).

¶ 79     But instead, plaintiff merely responded that those allegations were not legally relevant (which, as we have explained, was incorrect) and then nakedly announced that he was "not a danger to safety." Short of a confession to those disturbing allegations, it is hard to imagine how plaintiff's response could have been less helpful to his cause.

¶ 80     And plaintiff now claims that the standard of dangerousness-or-threat-to-public-safety was unconstitutionally applied against him. Given that he essentially lay down in the face of the standard, plaintiff cannot plausibly complain that the Board's ultimate decision to find him a danger and threat to public safety was a complete abandonment of the standard or an exercise of unfettered discretion. To the contrary, a reasonable member of the Board could have rationally determined that defendant's effective silence in the face of these shocking allegations was deafening, maybe even tantamount to an admission.

¶ 81     It is true that plaintiff requested a hearing, but the Board was not required to give him one. Hearings before the Board "shall be limited to circumstances that cannot be resolved to the CCLRB's satisfaction through written communication with the parties." 20 Ill. Adm. Code 2900.140(c) (2015). Plaintiff has not complained to this court that he was improperly denied a hearing, and we would have to agree with the Board that plaintiff gave it no reason whatsoever to provide one. Plaintiff's chance to put his best foot forward was in his written submission, and he wholly failed to do so.

¶ 82     Even if plaintiff could make the case that the words "danger" and "threat to public safety" are less than perfectly precise *in theory*—an argument we do not address—they were sufficiently definite *as applied to the facts of this case*. Hitting someone with brass knuckles is "dangerous" under the narrowest of definitions. Threatening people with a stint in a wood chipper, or with busting their heads open and breaking their legs, would make anyone's list of a "danger" or "threat." And given that plaintiff did absolutely nothing to disabuse the Board of the notion that he actually committed these acts, we cannot fault the Board for making the determination, by a preponderance of the evidence, that plaintiff posed a danger to himself or others and was a threat to public safety.

¶ 83     Because the state has the right to deny a concealed carry license to someone who is a danger or threat to public safety (*Aguilar*, 2013 IL 112116, ¶ 27), and because plaintiff made virtually no attempt to deny the allegations that led to the Board's finding of dangerousness or threat to public safety, he cannot establish that the denial of his license violated the second amendment. His as-applied second amendment challenge fails. As such, his facial challenge fails, too, because we need look no further than the case before us to find a constitutional application of the standard. See *Garvin*, 219 Ill. 2d at 125; *Wiggins*, 2016 IL App (1st) 153163, ¶¶ 75, 87.

¶ 84                                              *2. Vagueness*

¶ 85     Plaintiff also contends that the dangerousness standard violates his right to due process of law. While plaintiff couches this argument in terms of procedural due process, for reasons we explain more fully below, he has actually presented us with an argument that the dangerousness standard of section 20(g) is unconstitutionally vague.

¶ 86     The doctrines of procedural due process and vagueness are both rooted in due process principles. See *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966). But while procedural due process and vagueness have similar origins, the tests we apply in analyzing the two doctrines differ. For a procedural due process

claim, we apply the framework laid out in *Mathews*, in which we consider the individual's interest, the government's interests, and the risk of erroneous deprivation of the individual's interest under the existing procedures. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 277 (2004) (citing *Mathews*, 424 U.S. at 335). For a vagueness challenge, we consider two factors: (1) whether the law fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits so that they may act accordingly and (2) whether the law provides reasonable standards to law enforcement to ensure against authorizing or even encouraging arbitrary and discriminatory enforcement. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 21; see also *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

¶ 87    In this case, plaintiff relies on the vagueness standard, expressly quoting our supreme court's recitation of that standard in *Wilson*. His argument focuses on how the Act fails to provide an applicant of notice of the conduct that will prevent him from getting a concealed carry license, and that the Act grants the Board "virtually limitless discretion" to deny a license. These arguments more appropriately fit within the vagueness rubric. Moreover, he does not recite or balance the *Mathews* factors or explain what additional procedures should be in place to protect his right to carry a concealed firearm. Thus, plaintiff's argument is properly styled as a vagueness challenge, and we will consider it as such.

¶ 88    Having properly characterized plaintiff's argument, we now address its merits.

¶ 89    First, like other constitutional challenges, a vagueness challenge can take the form of a facial challenge or an as-applied challenge. *Wilson*, 2012 IL 112026, ¶ 23; *People v. Einoder*, 209 Ill. 2d 443, 448 (2004). Again, plaintiff does not specify the form his challenge takes, but if the as-applied challenge fails, then the facial one does by extension, as we have already explained. See *Garvin*, 219 Ill. 2d at 125; *Wiggins*, 2016 IL App (1st) 153163, ¶¶ 75, 87.

¶ 90    So we begin with the as-applied challenge. We examine whether the language of the statute is vague " 'in light of the particular facts of the case.' " *Einoder*, 209 Ill. 2d at 451 (quoting *People v. Greco*, 204 Ill. 2d 400, 416 (2003)). " 'When the statute is examined in the light of the facts of the case and the statute clearly applies to the party's conduct, then a challenge to the statute's constitutionality based upon vagueness will be unsuccessful.' " *Einoder*, 209 Ill. 2d at 451-52 (quoting *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 291-92 (2003)).

¶ 91    Our analysis here will sound familiar, because even though plaintiff couched his first constitutional challenge under the second amendment, in substance his argument was that his right to bear arms was violated by an impermissibly vague standard that allowed the Board to deny him his license based on its own subjective whim, not any meaningful criteria. We rejected that challenge, as applied to plaintiff, because we held that any reasonable definition of "danger" or "threat" would include the alarming conduct plaintiff was alleged to have committed, and which the Board found sufficient to deem him a danger and threat to public safety.

¶ 92    Our reasoning is not materially different here. Plaintiff claims that the Act failed to provide him notice of the conduct that would deny him a concealed carry license. But reading the Act, he was given clear notice that (1) the ISP would run a background check on him; (2) other law enforcement agencies would have the opportunity to weigh in on his application and, if they objected, to provide the basis of their objections to the ISP and the Board; and (3) if, after consideration of any possible objection, he was deemed to pose a threat to himself or others or a threat to public safety, his application would be denied.

¶ 93 And he certainly knew his own past. He might not have known if his alleged past conduct would ever be brought to light, but he cannot plausibly argue that he did not appreciate that, if it did, that allegations involving beatings with brass knuckles, threats to maim and kill in graphic terms, and 18 separate arrests might lead to a conclusion that he was "dangerous" or a "threat to public safety." As we have said before, even if the outermost boundaries of words like "danger" and "threat to public safety" were theoretically imprecise, what should have been perfectly clear to a reasonable person in plaintiff's shoes is that the allegations concerning his past conduct could comfortably fall within the heart of those definitions.

¶ 94 Because the challenged standard of dangerousness and threat to public safety clearly applied to the conduct of which plaintiff was accused, his as-applied vagueness challenge fails. As such, so does his facial challenge.

### D. Consideration of Hearsay as Constitutional Violation

¶ 96 Finally, plaintiff argues that, even if the Act permitted the Board to consider hearsay evidence, "such an interpretation violates [plaintiff's] Constitutional rights." Plaintiff says "[u]sing hearsay documents and summaries from some thirty-years [*sic*] ago as the foundation to interdict [plaintiff's] right to bear and keep arms is outrageous and unacceptable and violates his due process rights."

¶ 97 The entirety of plaintiff's argument is one-half of a page, with no citation to any authority. We fail to see how plaintiff could have possibly thought that a constitutional argument of this magnitude merited that minimal level of discussion. In fact, it is not even clear from his argument whether he claims that the use of hearsay violates his due process rights, his second amendment rights, or both. His argument merits no discussion on appeal. See *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205 ("The failure to cite any authority or to articulate an argument will result in forfeiture of that argument on appeal.").

### III. CONCLUSION

¶ 99 For the reasons stated, we affirm the judgment of the circuit court.

¶ 100 Affirmed.