2025 IL App (1st) 241302-U

SECOND DIVISION
July 29, 2025

No. 1-24-1302

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| EITAN HOROWITZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 23CH9347 |
| | ) | |
| ILLINOIS CONCEALED CARRY LICENSING | ) | |
| REVIEW BOARD and ILLINOIS DEPARTMENT | ) | |
| OF STATE POLICE, | ) | Honorable |
| | ) | Clare J. Quish, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the Board's decision to deny plaintiff's application for a concealed carry license, where the plaintiff's arguments on appeal had not been raised before the administrative agency and were thus forfeited.

¶ 2    Plaintiff, Eitan Horowitz, filed an application with the Illinois State Police ("ISP"), seeking a license to carry a concealed firearm in Illinois pursuant to the Firearm Concealed Carry Act (Carry Act). 430 ILCS 66/1 *et seq.* (West 2022). ISP received an objection to Horowitz's application from the Chicago Police Department ("CPD"), and forwarded the objection to the

Illinois Concealed Carry Licensing Review Board ("Board"). The Board sustained the objection, and directed ISP to deny Horowitz's application, finding by a preponderance of the evidence that he posed a danger to himself or others or a threat to public safety. Horowitz filed a complaint for judicial review of the Board's final administrative decision, and the circuit court affirmed. This appeal follows.

¶ 3 The record shows that Horowitz previously held a Firearms Owner Identification Card ("FOID") and a Concealed Carry License ("CCL") until February 22, 2021. Horowitz's FOID and CCL were apparently revoked after defendant was arrested following a February 11, 2021 incident. The police report related to that incident detailed allegations that Horowitz engaged in an argument with two individuals whose vehicle was parked in front of Horowitz's residence. After arguing with those individuals, Horowitz returned to his residence and then emerged, displaying a firearm. Horowitz told the individuals to "move your f*** car now or ill [sic] shoot you."

¶ 4 Horowitz was charged with "aggravated assault/use of a deadly weapon" but those charges were later "stricken" with "leave [to] reinstate." Horowitz later petitioned to have the arrest expunged, and the petition was granted on December 15, 2021.

¶ 5 Horowitz successfully appealed the revocation of his FOID card and his FOID card was reinstated. Horowitz then applied to have his CCL reinstated on July 30, 2023.

¶ 6 The Board received an objection from CPD based upon a reasonable suspicion that Horowitz was a danger to himself or others or was a threat to public safety. CPD attached to its objection the police report related to the February 2021 incident.

¶ 7 The Board provided Horowitz with notice of CPD's objection and noted that the objection "appear[ed] sustainable." The Board informed him that, pursuant to 20 Ill. Admin. Code 2900.140(e)(l), he had 15 days to submit any relevant evidence, including documentation

supporting any factual assertions he wished to make, to the Board for its consideration before a final administrative decision was rendered.

¶ 8     Horowitz submitted a one-paragraph response to the Board in which he stated that the charges were dismissed with prejudice, and that a court expunged the charges and records of the arrest. Horowitz stated that "[i]n the eyes of the law and in truth, it was found that I did not commit the offense mentioned by CPD and it's been removed from my record. Therefore, it should not impede my ability to obtain a CCL." Horowitz also stated that, as part of his FOID appeal process, he was "evaluated and cleared by *** [a] board-certified forensic psychologist" finding that he was "not a danger to [him]self, others, or public safety." Horowitz submitted the December 15, 2021, court order expunging his arrest, but he did not submit any psychological report to the Board.

¶ 9     On November 2, 2023, the Board issued its final administrative decision finding by a preponderance of the evidence that Horowitz posed "a danger to [him]self, or others, or [was] a threat to public safety," and directing ISP to deny his application for a CCL.

¶ 10     On November 9, 2023, Horowitz filed a "complaint for administrative relief" in the circuit court, and he filed a "brief in support" of his complaint thereafter, on February 7, 2024. Horowitz argued that the Board's decision to deny his application was without factual or legal basis, because the basis for CPD's objection was an arrest which had been expunged. Horowitz also referenced and attached a copy of a psychological report that he stated was required to be produced when he reapplied for his FOID card. Horowitz alleged that the report found that he was not a danger to himself or another person, and that the Board's finding that he was a danger was mere "speculation or conjecture."

¶ 11     Horowitz also contended that the "statutory scheme in effect in Illinois is unconstitutional," and that the denial of his CCL application violated his constitutional rights "in several ways."

Horowitz asserted that the Board's reliance on CPD's objection "violated, for example, [his] right to confrontation." Horowitz contended that the procedure used by the Board, "in not allowing [him] to participate in the [B]oard's decision making process," and in failing to hold an in-person hearing, violated his due process rights. Horowitz further asserted that the government could not "deprive him of his constitutional rights *** by a preponderance of the evidence standard, and without due process." Horowitz argued that the Board's order directing ISP to not issue him a CCL was a "warrant" or "writ" which could not issue "without a finding of probable cause."

¶ 12    On March 8, 2024, the Board and ISP filed a brief in support of the Board's final administrative decision. They contended that the Board's determination that Horowitz posed a danger to himself, others, or the public was not against the manifest weight of the evidence. The Board and ISP noted that the Carry Act "permits and requires the Board to consider evidence in police reports, regardless of the status (or existence) of subsequent criminal proceedings." They agreed that defendant's arrest had been expunged, but stated that Horowitz "offered no evidence as to why" it was expunged. He did not

> "deny that the conduct occurred—rather, he incorrectly stated that because his case was dismissed, it did not occur as a matter of law. *** [Horowitz] did not offer his own explanation of what happened on February 17, 2021. Simply asserting that charges were dropped and expunged does not address the conduct that led to them in the first place."

¶ 13    The Board and ISP explained that "[c]riminal cases can be dismissed for any number of reasons unrelated to the merits of the claim, including prosecutorial discretion, victims declining to participate in the judicial process, and any one of a number of other procedural reasons."

¶ 14    The Board and ISP also asserted that Horowitz could not rely on exhibits on administrative review, like the psychological report, which were not submitted to the Board and were not contained within the administrative record.

¶ 15    Finally, the Board and ISP maintained that Horowitz's constitutional claims were not meritorious. They noted that Horowitz "vaguely alleged [that] the [Carry] Act violates his constitutional rights under the Second, Fourth, and Sixth Amendments," but that he had not made such claims before the Board, and accordingly, they were forfeited. Moreover, Horowitz's claim that he should have been given an in-person hearing was forfeited where he never requested an in-person hearing, nor did he complain before the Board of the process afforded to him.

¶ 16    The Board and ISP also contended that Horowitz's constitutional claims failed on the merits because there was no due process right to a hearing before the Board on a CCL application, and the Carry Act had previously been found constitutional. They characterized Horowitz's argument that the Board's decision was a "warrant" under the Fourth Amendment as "lexical gymnastics," but "even if it were," the preponderance of the evidence standard used by the Board was "a more demanding standard than probable cause."

¶ 17    The trial court issued a final order on June 12, 2024. The trial court first noted that Horowitz attached a psychological report to his complaint for administrative review, but he had not submitted that document to the Board. The trial court explained that parties were not permitted to submit new or additional evidence on appeal of an administrative decision, and accordingly, the trial court could not consider it.

¶ 18    The trial court further found that the Board followed the procedures outlined in the Code, and that under the Code, the Board was not required to conduct an in-person hearing.

¶ 19    The court rejected Horowitz's argument that the Board erred when it considered CPD's objection and police report despite a court order expunging his arrest. The court explained that the Board could consider a plaintiff's entire criminal history, which included arrests, as well as hearsay evidence when evaluating a CCL application. Horowitz was "given the opportunity to explain" the incident to the Board, and he offered evidence that his arrest had been expunged. He did not, however, provide any evidence showing why it was expunged, and he "did not address the substance of CPD's objection, deny the allegations contained in the report or offer any mitigating explanation."  The trial court noted that Horowitz cited no authority to support his claim that the Board could not consider the circumstances surrounding an arrest or facts within a police report, if the arrest was later expunged. The court explained that expungement was "not a merits-based finding" that a person did not commit an offense, and the Board was not prevented from "considering that arrest or the circumstances surrounding it."

¶ 20    The court further stated that it could not "substitute its judgment for the Board's," but rather, on administrative review, the court "reviews the record to determine if the Board's decision is supported by sufficient evidence." Based on that review, the court found that "the Board's decision was neither against the manifest weight of the evidence nor clearly erroneous."

¶ 21    Finally, the court noted that Horowitz advanced several constitutional arguments, including that the Carry Act and the Board's administrative rules

"were unconstitutional, both facially and as applied, because Horowitz was not provided a face-to-face hearing, he was deprived of his confrontation rights in a criminal prosecution pursuant to the Sixth Amendment, he was deprived of due process and the Board's denial of his CCL application is a 'writ' which lacked

probable cause and violated his presumption of innocence because he was not convicted of any crime."

¶ 22 The trial court initially found the constitutional claims to be forfeited, because Horowitz failed to raise them before the Board. Moreover, even if the claims were not forfeited, the court found no merit to them. The court noted that prior cases have explained that a plaintiff is not denied due process by the Board's failure to hold an in-person hearing, as long as the plaintiff was notified of the law enforcement objection and provided an opportunity to respond. The court noted that, in this case, Horowitz was notified of the relevant objection, and he responded. Horowitz consented to the administrative procedure of written communications, and he never requested an in-person hearing. In such circumstances, the court found that Horowitz was not deprived of due process.

¶ 23 Horowitz timely appealed, and in this court, he continues to raise various constitutional challenges to the Carry Act.

¶ 24 The Carry Act (430 ILCS 66/1 *et seq.* (West 2022)), provides that the "Department shall issue a license to carry a concealed firearm under this Act to an applicant who" meets the qualifications listed in the Carry Act, provides the requisite application and other documentation, pays the requisite fees, and "does not pose a danger to himself, herself, or others, or a threat to public safety as determined by the *** Board." 430 ILCS 66/10(a) (West 2022). Upon receipt of the application, ISP "shall conduct a background check of the applicant to ensure compliance with the requirements," including "a search of *** all available state and local criminal history record information files." 430 ILCS 66/35 (West 2022).

¶ 25 The Carry Act also provides that a law enforcement agency:

"may submit an objection to a license applicant based upon a reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public

safety. The objection * * * must include any information relevant to the objection. If a law enforcement agency submits an objection within 30 days after the entry of an applicant into the database [of applicants and licensees], [ISP] shall submit the objection and all information available to the Board under State and federal law related to the application to the Board." 430 ILCS 66/15(a) (West 2022).

¶ 26    If an objection is submitted, it is the Board's duty to consider that objection as to the applicant's eligibility to obtain a CCL. The Board is required to review the materials received with the objection from the law enforcement agency and may request additional information from the law enforcement agency or from the applicant.  430 ILCS 66/20(e) (West 2022). The Board shall review each objection and determine by a majority of commissioners whether an applicant is eligible for a license. *Id.* If the Board determines by a preponderance of the evidence that the applicant "poses a danger to himself or herself or others, or is a threat to public safety, then the Board shall affirm the objection of the law enforcement agency *** and shall notify [ISP] that the applicant is ineligible for a license."  430 ILCS 66/20(g) (West 2022).

¶ 27    The Board's decision regarding a license is reviewable, first by the circuit court, under the Administrative Review Law. 430 ILCS 66/87 (West 2022). On appeal from the circuit court review, the appellate court does not review the circuit court's decision but the underlying administrative decision of the Board. *Perez v. Illinois Concealed Carry Licensing Rev. Bd.*, 2016 IL App (1st) 152087, ¶ 15. The standard of review depends on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact. *Id.*

¶ 28    We review an agency's purely factual determinations under the manifest weight of the evidence standard of review. *Marconi v. Chicago Heights Police Pension Board,* 225 Ill. 2d 497, 534 (2006). Under this standard, we take the agency's finding of fact as *prima facie* true and correct

and will reverse a factual finding only if, after viewing the evidence in the light most favorable to the agency, we conclude that no rational trier of fact could have agreed with the agency's decision and an opposite conclusion is clearly evident. *Id*. We will not reverse an agency's finding of fact merely because an opposite conclusion might be reasonable or we might have ruled differently. *Id.* The Board's ultimate decision that Horowitz was ineligible for a CCL presents a mixed question of law and fact, and is reviewed under the clearly erroneous standard. *Perez*, 2016 IL App (1st) 152087, ¶ 16.  A purely legal question is reviewed *de novo. Jankovich v. Illinois State Police*, 2017 IL App (1st) 160706, ¶ 31.

¶ 29     Initially, we note that in this appeal, Horowitz does not actually contend that the Board's factual determination that Horowitz posed "a danger to himself *** or others, or a threat to public safety" was against the manifest weight of the evidence, or that its decision to deny his CCL application was clearly erroneous. Instead, Horowitz raises several constitutional issues relating to the Carry Act, and the Illinois Administrative Code.  He argues that the "operation and application" of those statutes violated his Second, Fourth, Sixth, Seventh and Fourteenth Amendment rights. In particular, Horowitz argues that the Carry Act violates his second amendment right to keep and bear arms pursuant to *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022); that he was denied due process because the Board failed to conduct an in-person evidentiary hearing before denying his application; that the Board's denial of his application was akin to a "seizure" under the Fourth Amendment without a court proceeding; and that the Board's reliance on the police report violated his right to confrontation because he was unable to "contradict and confront *** hearsay evidence" contained in that report.

¶ 30     In response, the Board and ISP assert that Horowitz's constitutional claims lack merit, but, as a threshold matter, they must be rejected because he did not raise them before the Board, and

9

he has thus forfeited them for review. See *People v. Smith*, 228 Ill. 2d 95, 106 (2008) ("one of the two most important tasks of an appellate court panel when beginning the review of a case *** is to determine which issue or issues, if any, have been forfeited."). In Horowitz's reply brief, he does not acknowledge the Board's argument that his constitutional claims are forfeited, nor does he provide any argument as to how the claims were preserved or any basis on which his forfeiture could be excused.

¶ 31    We agree that all of Horowitz's constitutional challenges raised in this appeal are forfeited. Our supreme court has instructed that, in administrative proceedings, "if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). This rule of procedural default includes constitutional issues and challenges to the "the validity of a statute." *Id.* at 214. The supreme court "has repeatedly advised that a party in an administrative proceeding should assert a constitutional challenge on the record before the administrative tribunal, because administrative review is confined to the evidence offered before the agency." *Id.;* see also *Perez*, 2016 IL App (1st) 152087, ¶ 28 ("The failure to raise an issue before an administrative body, even a question of constitutional due process rights, results in the forfeiture of the issue on appeal."); *Lehmann v. Department of Children & Family Services,* 342 Ill. App. 3d 1069, 1078 (2003) ("failure to raise an issue before an administrative body—even a question of constitutional due process rights—waives the issue for review."); *Dombrowski v. City of Chicago,* 363 Ill. App. 3d 420, 425 (2005) ("an appellant cannot raise a constitutional issue for the first time on appeal to this court where the lower court has not had an opportunity to consider it. *** [I]t is generally

required that a litigant raise any challenges to a statute's validity at the administrative hearing and on review to the circuit court, lest the challenge be waived for purposes of appellate review.").

¶ 32    As stated above, our review in this case is limited to the record before the Board, and any arguments not raised before the Board may not be raised for the first time on administrative review. See *Cinkus*, 228 Ill. 2d at 212-14. Because Horowitz's constitutional arguments were never raised before the Board, we find those arguments forfeited.

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County affirming the Board's order denying plaintiff's application for a concealed carry license.

¶ 34    Affirmed.